**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BARBARA ANN NATTRESS,

                Plaintiff,

vs.                                                          Case No. 3:12-cv-679-J-34JRK

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

                Defendant.
_____/

## REPORT AND RECOMMENDATION[2]

### I. Status

Barbara Ann Nattress ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of back problems, epilepsy and/or syncope. See Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed August 8, 2012, at 219, 233. On February 25, 2009, Plaintiff filed applications for DIB and SSI, alleging an onset date of February 14, 2008. Tr. at 199-200, 201-04. Plaintiff's applications were denied initially, see Tr. at 122-24, 126-28, and were denied upon reconsideration, see Tr. at 134-35, 137-38.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida ("Local Rule(s)"), within fourteen (14) days after service of this document. Failure to file timely objections waives a party's right to de novo review. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a).

On January 13, 2011, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 37-116. At the time of the hearing, Plaintiff was forty-two (42) years old. Tr. at 40. The ALJ issued a Decision on February 25, 2011, finding Plaintiff not disabled through the date of the Decision. Tr. at 12-31. On May 23, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On June 14, 2012, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal. See Plaintiff's Brief (Doc. No. 14; "Pl.'s Br."), filed October 9, 2012. First, Plaintiff contends that the ALJ erred in his step five finding. See Pl.'s Br. at 10-19. Specifically, Plaintiff asserts that the ALJ's reliance on the VE's testimony is flawed because the VE's testimony was based on a hypothetical posed by the ALJ that did not include all of Plaintiff's limitations. See id. Second, Plaintiff argues that "[t]he ALJ did not apply the correct legal standards to the opinion of Mercedes DeCubas, Ph.D." ("Dr. DeCubas"), id. at 19 (emphasis omitted), a state mental health specialist, Tr. at 27. Plaintiff asserts that "the ALJ did not include Dr. DeCubas' opinion of a limitation in the ability to complete a normal workday and workweek in any of his findings." Pl.'s Br. at 20-21.

In response, Defendant avers that the ALJ's Decision is supported by substantial evidence. See Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem."), filed January 9, 2013, at 5-10. Defendant asserts that the ALJ properly considered all of Plaintiff's credible limitations stemming from her severe and non-severe

impairments. See id. at 10-15. Further, Defendant argues that "[t]he ALJ properly considered the opinion of Dr. DeCubas." Id. at 15.

On March 5, 2013, Plaintiff filed a Notice of Supplemental Authority (Doc. No. 18). Defendant filed a Response to Plaintiff's Notice of Supplemental Authority (Doc. No. 19) on March 19, 2013. After a thorough review of the entire record and consideration of the parties' respective memoranda and supplemental filings, the undersigned recommends that the Commissioner's final decision be affirmed for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 14-30. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since February

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

14, 2008, the alleged onset date." Tr. at 14 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: cervical disorder status post cervical fusion at C5-7, syncope and anxiety." Tr. at 14 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citation omitted).

The ALJ determined Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) as she is able to lift/carry 20 pounds occasionally and 10 pounds frequently.  She is able to sit for 6 hours and stand for 6 hours.  She is limited to occasional balancing, stooping, kneeling, crouching or crawling.  She is precluded from climbing, heights and hazards.  She is limited to occasional bilateral overhead reaching. She can frequently reach in all other directions.  She is limited to simple, routine, repetitive tasks with no quotas.  She would need some planning assistance.

Tr. at 16 (emphasis omitted).  At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as a "Construction Worker I" or as a "Manager, Fast Food." Tr. at 29 (emphasis and citation omitted). At step five, after "[c]onsidering [ Plaintiff's] age, education, work experience, and [RFC]," the ALJ found "there are jobs that exist in significant numbers in the national economy that [ Plaintiff] can perform," Tr. at 29 (emphasis and citation omitted), including "Counter Clerk," "Furniture Rental Consultant," and "Surveillance System Monitor," Tr. at 30.  The ALJ concluded that Plaintiff "has not been under a disability . . . from February 14, 2008, through the date of th[e D]ecision." Tr. at 30 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

As noted above, Plaintiff raises two (2) issues on appeal. Each is addressed in turn.

### A. ALJ's Step Five Finding

Plaintiff's first issue focuses on the ALJ's hypothetical presented to the VE. Plaintiff contends that the ALJ's failure to include in the hypothetical limitations stemming from Plaintiff's "[s]evere neck impairment"; "[s]evere syncope"; "[s]evere anxiety"; and "[m]oderate limitations in concentration, persistence and pace" requires reversal. Pl.'s Br. at 11, 13, 16, 17 (emphasis omitted). Plaintiff suggests the following limitations should have been included in the hypothetical: "stiffness, dysfunction, axial pain, or chronic neck pain" based on Plaintiff's severe neck impairment, id. at 13; "loss of consciousness, thrashing on the floor, amnesia, confusion lasting 30 minutes, dizziness or foaming at the mouth" resulting from Plaintiff's severe syncope, id. at 15; "unexpected panic attacks, generalized anxiety, or symptoms like trembling and nausea" based on Plaintiff's severe anxiety, id. at 16; and some explicit limitations resulting from Plaintiff's moderate limitations in concentration, persistence, and pace, id. at 17-18.

Responding, Defendant contends that merely having "a particular diagnosis says nothing about the severity of the diagnosis or how it limits [one's] ability to work." Def.'s Mem. at 10. Defendant asserts that the ALJ properly accounted for all of Plaintiff's impairments, including those argued in Plaintiff's Brief. See id. at 10-15.

In the fifth step of the sequential evaluation process, an ALJ may pose a hypothetical question to a VE as part of his determination of whether the claimant can obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written

decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished) (citation omitted). In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citations omitted). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)).

At the hearing held before the ALJ, the ALJ posed two hypotheticals to the VE. The first hypothetical was the one adopted as Plaintiff's RFC in the ALJ's written Decision and was stated to the VE as follows:

> The first hypothetical is 20 pounds occasionally, 10 pounds frequently, sit six, stand six. . . . . Occasional balance, stoop, kneel, crouch and crawl. No climb, no heights, no hazards. Occasional overhead reaching bilaterally. Frequent reaching all other directions.
>
> . . .

> This person is limited to a simple routine task with no quotas and this person needs some planning assistance.
>
> . . .
>
> So I think [planning assistance is] probably part of doing simple work. Somebody's got to direct you what to do.

Tr. at 98-99; see Tr. at 16.  In response, the VE opined that Plaintiff would be able to perform the following jobs: "[c]ounter clerk"; "furniture rental consultant"; and "[s]urveillance [system] monitor."  Tr. at 100-01, 103; see Tr. at 30.

In his written Decision, the ALJ thoroughly explained his reasoning for limiting Plaintiff to the above hypothetical and RFC.  First, the ALJ found incredible Plaintiff's testimony to the extent it was inconsistent with the ALJ's RFC.  Tr. at 19.  The ALJ reasoned that Plaintiff's "limitations are self-imposed as there are no records to show that any of her prior treating providers have provided any limitations on her." Tr. at 19.  The ALJ recognized that Plaintiff has had "numerous benign physical exams as well as negative diagnostic tests that have been run on several occasions."  Tr. at 19.  The ALJ noted that Plaintiff "alleged various problems ranging from headaches to syncope, which [are] unsupported by any test or medical evidence."  Tr. at 19.  Further, noted the ALJ, Plaintiff "is not [taking] any pain medications[,[4]]" and "her testimony regarding her inability to do activities contradicts prior reports in which she admitted she is able to do some things . . . ."  Tr. at 19.  The ALJ also reasoned that Plaintiff's "lack of compliance or willingness to seek specialist evaluation as

---

[4] Plaintiff testified that she takes "over the counter Tylenol for [her] pain and the Tylenol with arthritis[,]" but that she does not "take pain medication anymore." Tr. at 61. Considering the context, it appears that she meant she does not take prescription pain medications anymore.

-8-

recommended by her primary care physician suggests that [her] issues are not as severe as she has alleged." Tr. at 19.

Second, the ALJ provided a detailed summary of the medical evidence of record, including notation of multiple benign or negative objective testing. See Tr. at 19-28. Nevertheless, the ALJ gave Plaintiff the benefit of the doubt, explaining as follows:

> Given that [ Plaintiff] has had cervical fusion surgery done in the past (although she has had benign subsequent exams), the undersigned [(the ALJ)] has taken this into account with regard to her light exertional limitations as well as occasional postural motions. As for her mild syncope, the evidence shows all diagnostic testing as negative and unremarkable; however, given that [ Plaintiff] has been treated for possible syncope and near syncope in the past, the undersigned [(the ALJ)] has given [ Plaintiff] the benefit of the doubt and accounted for this by limiting her exposure to no heights, hazards or climbing. Lastly, although [Plaintiff] has not been treated by any mental health specialist, the undersigned [(the ALJ)] does acknowledge that she has taken Xanax for quite some time albeit her only treatment has simply consisted of medication refills. Regardless, the undersigned [(the ALJ)] has considered this and limited her to simple, routine, repetitive tasks with no quotas and would require some planning assistance. Overall, as discussed in detail above, the established [RFC] is consistent with the overall evidence of record.

Tr. at 28-29.

The ALJ may not have included the limitations desired by Plaintiff, however, the ALJ did include all credible limitations Plaintiff suffers from due to her impairments.[5] Those limitations are supported by the objective medical and opinion evidence in the record. After

---

[5] Specifically as to Plaintiff's "moderate limitations" in concentration, persistence, or pace, the undersigned notes that the ALJ properly accounted for such limitations in the hypothetical by limiting Plaintiff "to simple, routine, repetitive tasks with no quotas" and by stating that Plaintiff "would need some planning assistance." Tr. at 16; see Land v. Comm'r of Soc. Sec., 494 F. App'x 47, 50 (11th Cir. 2012) (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)); see also Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 871-72 (11th Cir. 2011) (unpublished) (citation omitted). Those limitations come directly from Dr. DeCubas's Mental RFC Assessment (that is discussed in more detail below). See Tr. at 849. The limitations imposed by the ALJ adequately account for Plaintiff's moderate limitations in concentration, persistence, or pace and are supported by the medical and opinion evidence in the record.

reviewing the ALJ's Decision, the administrative transcript, and the applicable legal authority, the undersigned concludes that the ALJ properly accounted for Plaintiff's limitations and that the hypothetical posed to the VE appropriately encompassed all of Plaintiff's credible limitations. The ALJ's Decision is supported by substantial evidence.

### B. Opinion of Dr. DeCubas

Plaintiff's second issue relates to the opinion of Dr. DeCubas dated January 8, 2010. Pl.'s Br. at 19-21. Specifically, Plaintiff argues that "the ALJ did not include Dr. DeCubas' opinion of a limitation in the ability to complete a normal workday and workweek in any of his findings." Id. at 20-21. Plaintiff adds, "When discussing Dr. DeCubas' opinion, the ALJ did not even mention her opinion of a moderate limitation in the ability to complete a workday or workweek." Id. at 21.

On January 8, 2010, Dr. DeCubas completed a Psychiatric Review Technique Form. Tr. at 833-46. Dr. DeCubas checked a box indicating that Plaintiff has "Anxiety-Related Disorders." Tr. at 833. Dr. DeCubas also checked boxes reflecting that Plaintiff has mild limitations in "Activities of Daily Living" and "Maintaining Social Functioning" and has moderate limitations in "Maintaining Concentration, Persistence, or Pace." Tr. at 843. Dr. DeCubas noted that Plaintiff stopped working because of her "physical problems" and that she has a "possible dependence" on her pain medications. Tr. at 845. Dr. DeCubas also indicated that Plaintiff "can understand instructions" and "can follow [instructions] as physical allows." Tr. at 845. According to Dr. DeCubas, Plaintiff's "memory [and] concentration [are] fair." Tr. at 845.

Based on the limitations noted on the Psychiatric Review Technique Form, Dr. DeCubas noted that such limitations require the completion of a Mental RFC Assessment Form. Tr. at 845. Therefore, also on January 8, 2010, Dr. DeCubas completed a Mental RFC Assessment Form. See Tr. at 847-50. That Form consists of three (3) sections: 1) "Summary Conclusions"; 2) "Remarks"; and 3) "Functional Capacity Assessment." Tr. at 847-49 (emphasis and capitalization omitted). The "Functional Capacity Assessment" is an explanation of the physician's "Summary Conclusions" in a "narrative form." Tr. at 849 (capitalization omitted).

In the "Summary Conclusions" section, Dr. DeCubas checked a box indicating that Plaintiff is "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. at 848 (emphasis and capitalization omitted). In section III of the form, the "Functional Capacity Assessment," Dr. DeCubas opined in relevant part as follows:

> [Plaintiff] is able to understand [and] remember simple instructions.
>
> [She] can carry out simple instructions.
>
> . . .
>
> A setting with increased details or demands may be more difficult/distracting. [She is] able to follow [a] schedule [and] can sustain goal directed activity fairly well. Timed/quota type settings would not be good as they would increase [her] anxiety.
>
> Social skills are adequate.
> [Plaintiff] would do better in a setting with few changes in order to minimize stress [and] frustration. Psych [treatment] would be helpful.

> She is able to sustain simple/routine goal directed activity as physical allows. [She] needs assistance to develop realistic plans. [She] is able to function on a daily basis in a routine setting.

Tr. at 849 (capitalization omitted).

In the ALJ's written Decision, he summarized the information contained in both forms completed by Dr. DeCubas as follows:

> On January 8, 2010, DDS mental health specialist, Mercedes DeCubas, Ph.D. reviewed the available medical evidence and completed a Psychiatric Review Technique.  Dr. DeCubas opined that [Plaintiff] had generalized anxiety disorder, which caused mild limitations on [Plaintiff's] restrictions of activities of daily living and difficulties in maintaining social functioning and moderate limitations in difficulties in maintaining concentration, persistence or pace. (Exhibit 23F).  Dr. DeCubas opined that [Plaintiff] was capable of understanding, remembering and carrying out simple instructions. Her social skills were adequate. She could sustain simple, routine goal directed activity and could function on a daily basis in a routine setting. (Exhibit 24F).

Tr. at 27. After considering Dr. DeCubas's opinion and the remainder of the evidence in the record, the ALJ assigned "significant" or "great" weight to Dr. DeCubas's opinion. Tr. at 28. The ALJ reasoned that Dr. DeCubas's opinion is consistent with and supported by the evidence in the record. Tr. at 28.

As noted above, Plaintiff focuses on the ALJ's failure to "mention [Dr. DeCubas's] opinion of a moderate limitation in the ability to complete a workday or workweek." Pl.'s Br. at 21; see Tr. at 848. Defendant maintains that "[t]he completed check-boxes on [Mental RFC Assessment Forms] are summary conclusions that the psychologist uses to assess a claimant's RFC in section III of the form." Def.'s Mem. at 15-16. According to Defendant, "[b]ecause the section I ratings are merely a worksheet to aid employees, courts have found that no weight is required to be assigned to these conclusions." Id. at 16 (citations omitted).

The Social Security Administration's Program Operations Manual System ("POMS") advises that the first section of the Mental RFC Assessment form, "Summary Conclusions," "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." Social Security POMS, Mental RFC Assessment, DI § 24510.060, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 (emphasis omitted).[6] Section III, Functional Capacity Assessment, is the section in which "the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." Id. "Checking the box 'Moderately Limited' means only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation." Jones v. Comm'r of Soc. Sec., 478 F. App'x 610, 612 (11th Cir. 2012) (citing POMS DI § 24510.063(B)(2)); see Satornino v. Comm'r of Soc. Sec., No. 6:12-cv-1059-Orl-22GJK, 2013 WL 1798970, at *1-2 (M.D. Fla. Apr. 29, 2013) (unpublished); Aldridge v. Comm'r of Soc. Sec., No. 6:11-cv-1914-Orl-36GJK, 2013 WL 1175008, at *6-7 (M.D. Fla. Mar. 20, 2013) (unpublished). "After checking the boxes as an 'aid,' [POMS, DI] § 24510.060(B)(2), a doctor is then required to detail his actual RFC assessment." Jones, 478 F. App'x at 612 (citing POMS DI § 24510.060(B)(4)).

Here, the ALJ incorporated Dr. DeCubas's opinion as delineated in section III of the Mental RFC Assessment Form into the hypothetical and the eventual RFC in the written

---

[6] "While the POMS does not have the force of law, it can be persuasive." Stroup v. Barnhart, 327 F.3d 1258, 1262 (11th Cir. 2003) (citations omitted).

Decision. The ALJ's omission of the summary conclusions found in section I of the Form does not require reversal in this instance. The summary conclusions are not the RFC, and checking a box indicating a claimant has a moderate limitation does not indicate the degree and extent of the limitation. See Jones, 478 F. App'x at 612. The narrative explanation in section III of the form is based on the summary conclusions in section I. The narrative explanation in section III is what guides the physician in forming the work-related limitations included in the RFC Assessment.[7] The ALJ here properly evaluated Dr. DeCubas's opinion and incorporated the limitations therefrom into the hypothetical and RFC. The ALJ's Decision is supported by substantial evidence.

## V. Conclusion

Upon review, the ALJ's Decision is supported by substantial evidence. No error can be found in the ALJ's formulation of the hypothetical, reliance on the VE's testimony, or the treatment of Dr. DeCubas's opinion. After due consideration, it is

**RECOMMENDED**:

1. That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

---

[7] It is apparent from Dr. DeCubas's findings in section III that despite Plaintiff's moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, Plaintiff can still "function on a daily basis in a routine setting." Tr. at 849. The undersigned notes that consideration of the entirety of Dr. DeCubas's opinion reflects that Dr. DeCubas believed Plaintiff's moderate limitations in this regard do not prohibit Plaintiff from all work.

    2.       That the Clerk of Court be further directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on August 2, 2013.

                                                          JAMES R. KLINDT
                                                   United States Magistrate Judge

jlk
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of record